# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
TRAVIS L. WATSON,              )
                               )
          Plaintiff,           )
                               )
     v.                        )    1:19cv931
                               )
SGT. MOORE,                    )
                               )
          Defendant.           )
```

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This case comes before the undersigned United States Magistrate Judge for a recommendation on the "Motion by Defendant Sergeant Moore to Dismiss Plaintiff's Complaint with Prejudice" (Docket Entry 9) (the "Motion").[1] For the reasons that follow, the Court should grant the Motion.

## BACKGROUND

Pursuant to 42 U.S.C. § 1983, Travis L. Watson (the "Plaintiff"), an inmate with the North Carolina Department of Public Safety (the "NCDPS"), commenced this action against Sergeant Moore (the "Defendant") for his alleged violation of Plaintiff's constitutional rights during Plaintiff's pretrial detention at the

---

1 For legibility reasons, this Opinion uses standardized capitalization in all quotations from the parties' materials.

Guilford County Jail (the "GCJ"). (See Docket Entry 2 (the "Complaint") at 1-13.)[2] According to the Complaint:

"Plaintiff ha[d] been clinically diagnosed with anxiety, depression, and personality disorder prior to th[e] event" at issue. (Id. at 5.) At 5:30 p.m. on January 2, 2017,

> Plaintiff asked to see a nurse about anxiety and depression. While waiting, [Defendant] approached Plaintiff and accused him of an earlier improper act and stated [that Defendant] ha[d] to put [Plaintiff] on suicide watch because [Defendant wa]s about to go home for the day and if anything happened to Plaintiff it would be on [Defendant]. At no time did Plaintiff say anything to any officer or nurse about harming himself or others. Plaintiff complied reluctantly with [Defendant's] orders. Plaintiff was immediately taken to a suicide cell and stripped naked at [Defendant's] command.

(Id. at 13.)

Plaintiff was "watched for 7 days until he demanded to know why he was being treated as such. A psychologist was sent to talk to Plaintiff in order to determine if Plaintiff needed further watch[ing]." (Id. at 12.) The psychologist indicated "that she did not see in the records why Plaintiff was on a suicide watch. After leaving, she returned and notified Plaintiff that he had been put in the cell by [Defendant] because of an alleged rule violation." (Id.) The psychologist "then ordered that Plaintiff be released from the suicide watch and his clothes were returned on [January 9, 2017]." (Id.)

---

2 Citations herein to Docket Entry pages utilize the CM/ECF footer's pagination.

Although the Complaint indicates that Plaintiff did not file a grievance "concerning the facts relating to th[e C]omplaint" (id. at 7), it also states that Plaintiff did file "Grievance No: 2017/2," which "claim[ed]," in relevant part, "unlawful suicide watch for 7 days as a pretrial [detainee]" (id.). The Complaint elaborates:

> For reasons unknown, as a pretrial detainee Plaintiff was transferred to prison after this event. When he was returned he filed request for grievance to address this issue but request was ignored. However in July of 2017 Plaintiff did file grievance and referred to this event in the complaint (Grievance No: 2017/2).

(Id. at 8.)

Defendant moved to dismiss Plaintiff's Complaint on the grounds, inter alia, that "Plaintiff failed to exhaust his Administrative Remedies under the Prison Litigation Reform Act." (Docket Entry 9 at 1.) In support of this assertion, Defendant provided Grievance No: 2017/2, which describes the nature of Plaintiff's "grievance/problem" as:

> I was intentionally, deliberately, and maliciously denied my rights of Due Process by [Sheriff] B.J. Barnes and staff at [the GCJ]. I was unlawfully held in segregation for 90 days without a hearing (2/22/17 to 5/22/17) after completing a 20-day segregation stint for (1) one guilty infraction. Again I was denied Due Process, being sent to [sic] process into the custody and control of the [NCDPS] for 26 days without judgement and commitment (5/22/17 to 5/30/17 and 6/22/17 to 7/10/17).

(Docket Entry 11-1 at 1.)

In response, Plaintiff concedes that Grievance 2017/2 does not cover the events at issue in the Complaint. (See Docket Entry 15 at 1.) More specifically, Plaintiff states:

> After review, there has in fact been an error. Plaintiff did not focus on the issue in this civil complaint when he filed Grievance No: 2017/2 on July 25, 2017 at the [GCJ]. This assertion by [] Plaintiff was not intended to mislead the Court. In the matter of exhaustion, Plaintiff was subjected to [Defendant's] actions on or about 1-2-17 to 1-9-17. Before [] Plaintiff could file any grievance on this matter, he was unlawfully transferred, by GCJ officials, to a state prison. The record will support that on 5-22-17[,]Plaintiff was abruptly transferred from the GCJ to Craven Correctional Institution (CCI) . . . . And so . . . Plaintiff was precluded from exhausting administrative remedies because he had no access to the rendered grievance procedure. As admitted by Officer Diehl in his/her affidavit,[3] Plaintiff was transferred back to the GCJ on 5-30-17, until June 22, 2017. During the month of June of 2017, [] Plaintiff did in fact file a complaint with [a GCJ official, Captain J.L. Rollins]. This complaint was filed by way of Guilford County Sheriff's Detention Bureau Form. In the Complaint, Plaintiff notified Cpt. J.L. Rollins of 3 issues: 1) That on 5-22-17 he had been illegally sent to prison, 2) That from 2-22-17 to 5-22-17 he had been illegally imprisoned in segregation, and 3) That he had been illegally imprisoned as a suicide [risk] for 7 days. Plaintiff requested a formal grievance to address these issues. [Cpt.] J.L. Rollins and any other official failed to respond to Plaintiff's complaint and request and instead, on June 22, 2017[, ]Plaintiff was again illegally transferred from the GCJ to the prison (CCI), where administrative remedies were again

---

3 In support of the Motion, Defendant submitted an affidavit from Officer M. Diehl detailing the dates of Plaintiff's detention at the GCJ and providing all of Plaintiff's "Grievance Forms at the [GCJ]" (Docket Entry 11, ¶ 4) for the duration of his detention there. (See id., ¶¶ 2-4; see also Docket Entry 11-1.) Defendant also submitted an affidavit from Captain Z. Sellars detailing and attaching the GCJ's grievance procedures. (See Docket Entries 12, 12-1.)

4

> unavailable. . . . Officer Diehl and Cpt. Z Sellars, who both offer affidavits addressing the grievance procedure and two filed grievances by [] Plaintiff, have neglected to address the fact that [] Plaintiff did file a complaint by way of request form to Cpt. J.L. Rollins, the request being contained in the request form records mentioned by Officer Diehl in the affidavit. [] Plaintiff respectfully asks the Court to allow the complaint filed to [Cpt. Rollins], who also reviews grievance complaints, to serve as proof of exhaustion since [Cpt. Rollins] did not respond to the complaint and request. In the alternative, [] Plaintiff respectfully asks that this matter be excused from exhaustion because of the actions by GCJ officials to illegally send him to prison (as the record will support) on 5-22-17 and 6-22-17, thereby rendering administrative remedies unavailable to [] Plaintiff. . . . It is only by GCJ officials['] action and inaction that has caused this matter not to be properly channeled through the grievance procedure.

(Id. at 1-3.)

## DISCUSSION

### I. Relevant Standards

Defendant moves to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "Rules"). (See Docket Entry 9 at 1.) To avoid such dismissal, a complaint must contain sufficient factual allegations "to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To qualify as plausible, a claim needs sufficient factual content to support a reasonable inference of the defendant's liability for the alleged misconduct. Id. Facts that remain "'merely consistent with'" liability fail to establish a plausible claim for relief. Id. (quoting Twombly, 550

5

U.S. at 557). However, the complaint need not contain detailed factual recitations, as long as it provides "the defendant fair notice of what the claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555 (internal quotation marks and ellipsis omitted).

In reviewing a motion to dismiss, the Court must "accept the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff." Coleman v. Maryland Ct. of App., 626 F.3d 187, 189 (4th Cir. 2010), aff'd sub nom., Coleman v. Court of App. of Md., 566 U.S. 30 (2012). The Court must also "draw all reasonable inferences in favor of the plaintiff." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 440 (4th Cir. 2011) (internal quotation marks omitted). Moreover, a pro se complaint must "be liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted).

Nevertheless, the Court "will not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc., 707 F.3d 451, 455 (4th Cir. 2013) (internal quotation marks omitted); see also Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (explaining that the United States Court of Appeals for the Fourth Circuit has "not read *Erickson* to

undermine *Twombly*'s requirement that a pleading contain more than labels and conclusions" (internal quotation marks omitted)).  "At bottom, determining whether a complaint states . . . a plausible claim for relief . . . will 'be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Iqbal, 556 U.S. at 679).

Furthermore, a Rule 12(b)(6) motion "tests the sufficiency of a complaint," but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (emphasis added).  Thus, "claims lacking merit may be dealt with through summary judgment under Rule 56" rather than through a Rule 12(b)(6) motion.  Swierkiewicz v. Sorema N. A., 534 U.S. 506, 514 (2002).  Nevertheless, dismissal remains "appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense." Brooks v. City of Winston-Salem, 85 F.3d 178, 181 (4th Cir. 1996).

Further, in ruling on a Rule 12(b)(6) motion, "a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint."  E.I. du Pont, 637 F.3d at 448.  The Court may also consider documents "attached to the motion to dismiss, so long as they are integral to the complaint and authentic."  Philips v. Pitt Cty. Mem'l Hosp., 572

7

F.3d 176, 180 (4th Cir. 2009).  Generally, a "court cannot go beyond these documents" without "convert[ing] the motion into one for summary judgment."  E.I. du Pont, 637 F.3d at 448.

As such, if "matters outside the pleadings are presented to and not excluded by the [C]ourt, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).  In turn, under Rule 56, "[t]he [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The movant bears the burden of establishing the absence of such dispute.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Moreover,

> [w]here, as here, the movant seeks summary judgment on an affirmative defense, [he] must conclusively establish all essential elements of that defense.  When the defendant has produced sufficient evidence in support of [hi]s affirmative defense, the burden of production shifts to the plaintiff to come forward with specific facts showing that there is a genuine issue for trial.

Ray Commc'ns, Inc. v. Clear Channel Commc'ns, Inc., 673 F.3d 294, 299 (4th Cir. 2012) (citation and internal quotation marks omitted).

8

Case 1:19-cv-00931-LCB-LPA   Document 18   Filed 02/04/21   Page 8 of 15

Additionally, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. Moreover, "the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment." Lewis v. Eagleton, No. 4:08cv2800, 2010 WL 755636, at *5 (D.S.C. Feb. 26, 2010) (citing Baber v. Hospital Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992)), aff'd, 404 F. App'x 740 (4th Cir. 2010); see also Pronin v. Johnson, 628 F. App'x 160, 161 (4th Cir. 2015) (explaining that "[m]ere conclusory allegations and bare denials" or the nonmoving party's "self-serving allegations unsupported by any corroborating evidence" cannot defeat summary judgment). Finally, factual allegations in a complaint or court filing constitute evidence for summary judgment purposes only if sworn or otherwise made under penalty of perjury. See Reeves v. Hubbard, No. 1:08cv721, 2011 WL 4499099, at *5 n.14 (M.D.N.C. Sept. 27, 2011), recommendation adopted, slip op. (M.D.N.C. Nov. 21, 2011).

## II. Exhaustion Requirement

As relevant here, the Prison Litigation Reform Act of 1995, as amended (the "PLRA"), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative

remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). The defendant bears the burden of establishing that a prisoner failed to exhaust administrative remedies. See Jones v. Bock, 549 U.S. 199, 216 (2007) ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints.").

Nevertheless, the "exhaustion of administrative remedies under the PLRA is a question of law to be determined by the judge." Drippe v. Tobelinski, 604 F.3d 778, 782 (3d Cir. 2010); see also Lee v. Willey, 789 F.3d 673, 677 (6th Cir. 2015) ("[A]ll . . . of the circuits that have considered the issue agree that judges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury." (internal quotation marks omitted)). A prisoner satisfies the PLRA exhaustion requirement when he "ha[s] utilized all available remedies 'in accordance with the applicable procedural rules,' so that prison officials have been given an opportunity to address the claims administratively." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008) (quoting Woodford v. Ngo, 548 U.S. 81, 88 (2006)). Thus, the relevant jail's grievance

10

procedures determine the steps that a prisoner must take to meet his exhaustion obligations. See id. at 726.

Per Grievance 2017/2, an individual "must file the grievance within three days from the date [he] discovered or reasonably should have discovered the incident giving rise to the complaint and was able to file the grievance." (Docket Entry 11-1 at 1.) That requirement accords with the GCJ grievance procedures that Captain Sellars provided. (See Docket Entry 12-1 at 1 ("The inmate must file the grievance within three (3) days from the date of the incident, the discovery of the incident, when they reasonably should have discovered the incident, giving rise to the complaint, or within three (3) days of receipt of a response to an inmate request form [detailing the inmate's compliance with the GCJ's informal resolution process, specifying the relevant grievance, and requesting a grievance form].").)

## III. Analysis

As a preliminary matter, Defendant relies on materials outside the Complaint in support of his Motion. (See, e.g., Docket Entry 10 at 6-7.) Accordingly, the Motion more properly constitutes a request for summary judgment than for Rule 12(b)(6) dismissal. See Fed. R. Civ. P. 12(d). The distinction between Rule 12(b)(6) and Rule 56 motions has little bearing on the outcome of this case, however, because (i) the Court can properly consider Grievance 2017/2 in resolving the Motion under Rule 12(b)(6), see Philips,

11

572 F.3d at 180, and, in any event, (ii) the parties agree on the relevant facts (see, e.g., Docket Entry 10 at 6-7; Docket Entry 11, ¶ 2; Docket Entry 15 at 1-3.) In this regard, the record reflects the following:[4]

No later than January 9, 2017, GCJ officials released Plaintiff from suicide watch. (See, e.g., Docket Entry 2 at 12-13 (alleging that Plaintiff remained on suicide watch from January 2, 2017, to January 9, 2017); Docket Entry 11, ¶ 2 (averring that "Plaintiff was on Suicide Watch from December 31, 2016 until January 5, 2017").) Plaintiff alleges that, on January 9, 2017, a psychologist informed Plaintiff that Defendant had placed him on suicide watch "because of an alleged rule violation." (Docket Entry 2 at 12.) According to Plaintiff, the psychologist "then ordered that Plaintiff be released from the suicide watch and his clothes were returned on [January 9, 2017]." (Id.) On May 22, 2017, NCDPS officials transferred Plaintiff from the GCJ to another NCDPS facility, where he remained until May 30, 2017, at which point he transferred back to the GCJ, where he remained until June 22, 2017. (See Docket Entry 11, ¶ 2; Docket Entry 15 at 1-2.)

In July 2017, Plaintiff filed Grievance 2017/2, which does not address the suicide watch incident. (See Docket Entry 11-1 at 1.)

---

[4] It bears noting that neither Plaintiff's Complaint nor his response to the Motion constitutes evidence for summary judgment purposes, as he did not submit them under penalty of perjury (see Docket Entries 2, 15). See Reeves, 2011 WL 4499099, at *5 n.14.

12

Plaintiff maintains, however, that during June 2017, he filed a complaint with a GCJ official, Captain J.L. Rollins, reporting the suicide watch incident and requesting a grievance form. (See Docket Entry 15 at 2.)[5] Per Plaintiff, neither Captain Rollins nor any other GCJ official responded to that June 2017 complaint. (See id.) Plaintiff asks the Court to either allow that alleged June 2017 complaint "to serve as proof of exhaustion" or, alternatively, to "excuse[]" this matter "from exhaustion because of the actions by GCJ officials to illegally send him to prison . . . on [May 22, 2017,] and [June 22, 2017], thereby rendering administrative remedies unavailable to [him]." (Id. at 2-3.)

In sum, the record reflects that Plaintiff failed to file a grievance, as required, regarding the suicide watch incident. The record further shows that, although Plaintiff knew by at least January 9, 2017, of "the incident giving rise to the complaint" (Docket Entry 11-1 at 1), he did not attempt to pursue a grievance

---

[5] As Plaintiff suggests, the GCJ grievance process begins with an informal resolution process in which an inmate alerts GCJ officials to a complaint, which GCJ officials "shall attempt [to] remedy for the inmate." (Docket Entry 12-1 at 1.) If the GCJ official "is unable to provide a satisfactory remedy for the complaint, the officer or employee shall issue a request form to the inmate. Only if the inmate has satisfied the above requirements and is unsatisfied with the resolution of that request or complaint, then the inmate can request a grievance form" by "submit[ting] an Inmate Request Form requesting a grievance form, stating the matter to be grieved, and detailing how the inmate has complied with the foregoing requirements." (Id.) "If proper, the inmate will then be issued a Grievance Form," which he "must fully complete" within three days. (Id.)

13

regarding the suicide watch until, at the earliest, June 2017, even though he remained at the GCJ until May 22, 2017 (see Docket Entry 15 at 1-3). Thus, the record establishes that Plaintiff neither initiated the informal resolution process nor "file[d a] grievance within three days from the date [he] discovered or reasonably should have discovered the incident giving rise to the [C]omplaint," as the GCJ's grievance policy requires. (Docket Entry 11-1 at 1.) Plaintiff therefore failed to exhaust administrative remedies before filing suit, necessitating dismissal of his Complaint. See, e.g., Germain v. Shearin, 653 F. App'x 231, 234 (4th Cir. 2016) ("Given that [the plaintiff] failed to his [sic] exhaust his claims, dismissal is mandatory.").[6]

---

6 In addition, as Plaintiff concedes, his official-capacity claim against Defendant lacks merit. (See Docket Entry 15 at 7.) Under Section 1983, official-capacity liability occurs only if "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Collins v. City of Harker Heights, 503 U.S. 115, 121 (1992) (internal quotation marks omitted). Relevant here, "an official's discretionary acts, exercised in carrying out official duties, do not necessarily represent official policy." Perdue v. Harrison, No. 1:17cv403, 2017 WL 4804363, at *2 (M.D.N.C. Oct. 24, 2017). "Rather, the official must have 'final authority' over government policy with respect to the action in question to trigger official capacity liability." Id. (certain internal quotation marks omitted). The Complaint contains no allegations that Defendant either acted pursuant to any GCJ policy or possessed "final authority" over any such custom or policy. (See generally Docket Entry 2.) Accordingly, Plaintiffs' official-capacity claim against Defendant fails as a matter of law.

Finally, Defendant moves to dismiss "Plaintiff's State Law claims . . ., if any." (Docket Entry 9 at 2.) The Complaint does
(continued...)

## CONCLUSION

Plaintiff failed to exhaust administrative remedies before filing suit.

**IT IS THEREFORE RECOMMENDED** that the Motion (Docket Entry 9) be granted and this action be dismissed without prejudice for failure to exhaust administrative remedies.

This 4th day of February, 2021.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

---

6(...continued)
not raise any such claims (see generally Docket Entry 2), mooting such request.